Good morning, Your Honor's committee, please record and try to see me for the record. In plaintiff's law, 75,000 Kaiser employees filed a relatively simple case in the California courts, alleging that the manner in which Kaiser diverted 9 cents per hour from their wages, as well as the fact that Kaiser failed to disclose this diversion in any way on their wage statements, violated California laws. Your Honor, understanding the state law, what does the state law mean by the greater time wages? Yes, Your Honor. I mean, what does the state law mean by the greater time wages? How do we know? Well, I would say that the idea that, first of all, the state law inquiry has to do specifically with the phrase, the greater time wages is a semantic trick that defendants are playing here. There are three different key statutes at play here, Section 222, Section 224, and Section 226. And Section 222 is a basic breach of contract section that states that it shall be illegal, I'm sorry, the 1937, it states it shall be illegal to withhold any portion of the wage-agreed employment. But that's, but how do we know? How do we understand? I mean, you do have various states, which are 24, 26, right? In the end, so the deductions are, the allowable deductions are specifically listed in 224, and those have been interpreted in the common law as being limited, the deductions are limited to those specific circumstances. In other words, deductions for insurance or for retirement benefits, and which are specifically agreed to in hiding wages. From the employer's point of view, it doesn't matter whether you, they're interested in the bottom line, but they're paying per hour per employee, whether it's wages or risk wages, they're pretty much indifferent to. It would show up on a W-2, if they had you as a W-2, at least what those tax forms show, it would show up here, but that would be almost just positive employment. So whether it shows up on a W-2 as wages or not? I am not completely sure. I would assume that what shows up in the equal wage scales, it shows up on the W-2s. Right, so it's not wages. The 9-6 is covered, it's not wages. Your Honor, that's... You don't have to cover anything to know that. Well, Your Honor, that's boring. I mean, you would have to look at all the other California cases that have dealt with this issue, in those cases as well, it didn't show up in the W-2. I mean, that's the end of it. And yet, in California... That's why it's a state law issue, ultimately. I mean, which nobody's briefed here. I mean, nobody's really told us exactly what, and it isn't really, once you know what the state law is, then you can figure out whether there's anything hard about looking at the collective bargaining agreement for the answer. If you just, if you know what the state law is, you can either look at the local agreements account of what it is, or you can look at the W-2, or you can look at maybe the national agreement, I gather, and the amount that's in there really is a baseline for calculating interest rates. But if we knew the state law, we'd know the answer, right? So you don't have to refer to the contract. Exactly. That's exactly, I mean, the entire game that they've been playing, in which the district court adopted, was sinking to, they've been trying to re-characterize these inquiries under state law. The question under state law is, do you have gross wages, do you have deductions, do you have net wage, okay? And the state law inquiry is to say, okay, we have these different wage terms, how do we, in the state of California, label these contractual terms? The contractual terms themselves are completely fixed and undisputed. Now, there's been many, many states, their meaning is absolutely clear. Their substance of meaning is absolutely clear. The only thing that is unclear is how California looks at them under this particular statutory scheme. So, of course, Wisconsin can have a statutory scheme that looks at these same fixed terms in its way, Oregon can have a, can call a deduction or whatchamacallit, they can call it whatever they want to call it. What California wants to call these terms, how it labels these terms, the California inquiry looking at these terms, doesn't change the fact that the terms themselves are fixed. They're substantively fixed. Going all the way back to Lucas, Flower, and Lewin, the purpose of Section 301 preemption is to ensure the interpretive uniformity of the substantive terms of the collective bargaining agreement as agreed between the parties at the date of contracting. So, in other words, when the union representative and when the employer shake hands, they look each other in the eye, they say, okay, we're going to pay the employees this much for doing these duties, for these hours, they're going to get these sort of retirement benefits, etc., etc. Those are the terms, those are the substantive terms  They're not agreeing on how contract terms will be labeled under demonstrate laws or anything like that. They're simply agreeing to those substantive terms. Now, those substantive terms are ensured to be enforced uniformly throughout the 50 states. That's the purpose of this doctrine. Do you agree that the agreed-upon wage is contained in the negotiated wage rates charts in the local agreements? Okay. Do you agree with that? There's two. The plain English, where are the local agreements agreed upon? Of course, they were agreed upon, right? But agreed-upon wage is a statutory term that appears in 222, which is synonymous with gross wages. If you read 224 and 226, you'll see that there's various different statutory terms. So is that yes? Do you agree to that? Do I agree to... No, my question is... Let me ask the question, because I'm trying to follow your complaint here. Paragraph 30 of your complaint states that agreed-upon wage terms of the 2005, 2010, and 2012 national agreements are stated in Section 2A and 1 of each agreement as across-the-board wage increases of a specific percentage. Do you stand by that proposition? Absolutely. But then, in terms of the statutory meaning, yes. Then how can we resolve the dispute over whether this agreed-upon wage is going to be in Section 2A and 1 of the national agreement like you proposed in the negotiated wage chart in the local agreement? It seems like... It's a question for a California court where which one was the agreed-upon wage, the statutory term agreed-upon wage, as it appears in 222, which is synonymous with gross wage. Is the gross wage the 3% across-the-board increase or is the gross wage the wage scales? We disagree on that. The resolution of that dispute is a question of California law. Well, do you have to interpret the CBA? No, not at all. You just said that they have to have the California court interpret it. The California court interprets it according to California law and according to the surrounding factual circumstances. What was the accounting? What were the communications to the employees? In your brief, you also state that you have always fully agreed with the statement that the collective bargaining agreements in question consist of both the national agreement and the local agreement. Your complaint alleged that the national agreements preceded any local collective bargaining agreements and are binding on local unions, except for when local agreements provide superior wages or benefits. So are you basically amending your complaint in the appellate briefing and I'm trying to figure out what's going on? Are the allegations that the national agreement supersedes and is binding in your complaint incorrect? That is a precise quote from the national agreement itself. All I'm doing there is quoting what the national agreement uses, the word supersedes. No, but the argument in your collective bargaining agreement issue, it seems to me, may be about if your argument is that, well, there are these two different wages listed, but the national agreement wins, then somebody does have to interpret the agreement. But I'm not alleging that the national agreement states that. It states it supersedes. Although I understand that, but then we do have a problem. It seems to me that you have the North California agreement, this wage rates. Those, I understand, do not have the nine cents in them. The wages that are reported in there don't have the nine cents in them. Right? And the ones that the national agreement, as I understand it, don't have the nine cents in it, only with regard to how you're calculating increases, but not the bottom line. What happens is the national agreement provides for 3% of the cross-border wage increases. Right. And that's in one of the sections subject to arbitration. And in a section that's not subject to arbitration, in one sentence in a section talking about the labor management partnership trust in sort of exalted terms, there's one sentence which mentions the nine cents per hour contribution. Then, without any disclosure anywhere else ever, the wage scales are the net of the 3% of cross-border increase minus the nine cents per hour. The wage scales are in the local agreement. Right. So the whole point is to minimize and essentially conceal the nine cents per hour deduction. Okay. Because the nine cents per hour deduction doesn't appear anywhere except for that one sentence. It doesn't appear on their wage statements. It's not clearly set out in the local agreements. It's not set out in the section on wage benefits. So we are talking ourselves into the fact that someone has to pay their own salary like an intercollective bargaining agreement. No, they don't need to look at it by collective. They can look at the accounting. Okay. They can look at all the facts. In the supplemental briefing, I talked about all the facts which show that this was clearly treated as a deduction. It was clearly treated as a deduction. For example, when 3 bargaining units. Well, I was just answering what I asked you about the W-2. I understood it to be that for taxable wages, they're not reporting the nine cents. And that's the entire point. I mean, they're not really wages. They are really wages. In other words, what do you report? My understanding is that when there are other deductions, like people will be able to shake your hand. That's fine. No, no, no. We take the wages in California or the amount offered or promised. Okay. W-2 doesn't determine wages in California law. Wages in California or the amount offered or promised, you can look at Pregnancy Suicide and Arrest. You can look at all of these California cases. California has had a problem with this. Back to the trade depression, W-2, we've had a problem with this issue. You know, CARES, Catering, Quillian, et cetera, et cetera. Employers have been using the device of deduction to manipulate and conceal and essentially steal from employees for a time immemorial. And in the Great Depression, this became a great problem. Therefore, in 1937 and 1942, California passed Sections 222, 224, and 226, strictly limiting the use of deduction and requiring, through Section 226, the clear disclosure and transparent disclosure to employees what is happening to their wages, listing all deductions. Okay. So California is very sensitive about this issue. What Kaiser is doing here is they're revisiting a sort of misconduct on the part of employers that hasn't... that no employer has attempted for quite some time, frankly. And we are calling them out on it again, and it's something that we want to continue to do. All right, thank you. Thank you. Thank you. Thank you. Good morning, and may it please the Court. I'm Michael Lindsey, and I'm here on behalf of Kaiser for Kaiser Defendants. I think the starting point here is, was this case properly moved to this Court? The complaint contains very specific allegations about what the contract provides, what the national agreement provides, and what the wage calculations were under the national agreement. In other words, there's a complaint file that's in there. I don't know where my complaint is. The national agreement, we have a provision that says compensation across the board of wage increases, test percentages. How do we know what they're using as the base? We don't. That's why it was necessary to review the national agreement together with the local agreements. Why is it necessary to review the national agreement? Together, because to get to the interpretation that plaintiffs want us to advance here, they have to create a wage scale different from those published complaints. All right, but the question is whether the case can be resolved without interpreting the collective bargaining agreement. At a state law, excuse me, you both like to shake your heads. If the state law would have been clear that the wage agreed upon is the wage, and the collective bargaining agreement, i.e., what's in the local agreement, then you don't have to interpret anything. I think that's correct. I would agree that if the wage is agreed upon, which is a language out of 222, which actually predates the labor-management relations act, which is the second part of section 301, that says that the wage is agreed upon in the collective bargaining agreement must be paid without deduction. The question then becomes, what are those wages? Because in this case... That's a state law question. Well, it's not a state law question. Why not? Because collective bargaining agreements set the wage as hours of working conditions. In this specific case, there is a clear dispute as to what the wages are under the collective bargaining agreement. That is what we do. For example, the state law was that the wages agreed upon are the wages reported on, and treated for tax purposes as wages paid. Then we would know that that was... And there would be what does New York do. But if that is the dollar amount reported to the employees as their wages, which is in this instance what's in the local agreement, then that would be the answer that wouldn't have to control anything. But here the argument is that the $0.09 per hour contribution is a deduction from a wage scale that has not been presented and is not available for review. I don't really think that is part of under state law that you would have to interpret anything. I'm not sure that's correct. Because if the parties have agreed to... The statute says agreed upon wage. If the union and the employer have agreed upon a wage, set it forth as an attachment to the local agreements, how they got there doesn't require interpretation. But where the argument is, as it is here, that how they got there was to conceal an illegal deduction... Why isn't the answer they lose under state law because state law doesn't allow it? Because it requires an interpretation of the collective bargaining agreement. Because it's not limited to state law. The issue here is, what are the wages set under the collective bargaining agreement? What were the wages agreed upon? Now, I will carefully concede that the vast majority of cases, simple reference to the wage table resolves the issue. Simple reference to a third-party source resolves the issue. That's not what was alleged in the complaint. What was alleged in the complaint was that the national agreement contained a provision that created a different wage scale than that that was set forth in the attachment to the local agreements, and that there were really 2 separate wages. The counsel themselves have said it's for the state courts to interpret the agreements to arrive at the conclusion. It's just more satisfying to me to get to the question of what the state law actually is, than to leave it up in the sky and say that federal law is preempt or something that just may not matter at all. But federal law preempts where there... Well, anyway, right? Of course. Federal law preempts where the complaint is under state law. It's a statute. Even if state law might, in fact, be what you say it is and what I'm saying it might be, that doesn't matter, because what matters is what they're alleging, and what their alleging requires you to do in order for a complaint to be heard. The question is who decides what a flipped apartment agreement really means. Number one, it should be an arbitrator. If it's made an arbitration, it then becomes a federal court question. Under Section 301, either it's a breach of a contract claim or it's a breach of a... I'm not sure what it means. You're just wrong about state law, and therefore we win. I'm not sure that I can do that. Without the interpretation... That's exactly what I'm trying to get to. Why? Because the interpretation here is substantially different. The case analysis is substantially different. To the effect that your defense is that they have a rule that's not state law? No. The issue is whether or not their claim is substantially dependent on an interpretation of state law. I hope that explains the reading correct under state law. Because that's not what the religious creed of God means under state law. You could win without ever interpreting a flipped apartment agreement. But they're complete alleges an interpretation of... I mean, that's the question. The question is why would anyone get to complain first rather than the question of whether you ever... whether there just feels to be wrong about state law. Because the issue before this court is a jurisdictional one. Whether or not this case was properly removed to the federal district court. We are here on a motion to an appeal of a denial of a motion to remand. Following the denial, the district court needs to amend to address the very issues I think that your honor is raising. One is to decline the opportunity for at least a moment and instead opt to appeal the remand issue. So tell us what's the remand issue. Right. And the removal question is based on the... And the complaint creates this question. Okay. So have I given you jurisdiction? Can you still simply depend on the basis of state law and never ever think or even argue that you have jurisdiction? No, I don't think so. Because I think here some of these claims are that the national agreement says one wage scale. The local agreement says a different wage scale. Somebody is going to have to interpret that contract to determine which is right. You argue that the wages agreed upon are located in the negotiated wage chart in the local agreement. That's correct. So if that's true would the court simply need to look to the chart to discover the wages agreed upon? Absolutely. But here is given the status of this complaint from a jurisdictional standpoint as HMO Rule 303 does not apply if you really have to refer to a collective bargaining agreement. Here you would actually have to analyze the length of what is raised in the complaint. To determine if there was a violation of section 222 the court may need to determine if you were deducting the nine cents per hour from the agreed upon wage. And it seems like, or I understand that you argued that the section 222 claim would necessarily I guess fail at that point. Is that what you're saying? I think the 222 claim is preempted at that point. Once you have to do an analysis of the collective bargaining agreement to arrive at the agreed upon wage, you are now in the area where the claim is substantially dependent. This is the word out of global, word out of Burnside. And it also is a collective bargaining agreement. And it is substantially dependent when 301 preempts the state law on this issue. And so, not only was it a claim on the merits, but the claim itself goes away. And the preemption doctrine turns it into a 301 lawsuit for some sort of breach of contract, which is required interpretation of that agreement in a kind of classic contract sense. And that's really, you know, the heart of it is that we are here on a jurisdictional issue as to whether or not the complaint is filed and is removed unless we preempt it by sub-301. Is whether that governs the way the case proceeds? I think it does. And the fact that there's jurisdiction because that's how they alleged to mean that it has to, that the case, that the claim that goes away versus its result on state law, can it still be resolved on state law grounds without actually interpreting the agreement? I don't think so. I think that, and my time is up on the court's question. I think that when the case is removed and jurisdiction under 301 is found, 301 transforms the state law claims into 301 claims. That's kind of the fundamental concept of it. Yeah, yeah, yeah. I mean, the complaint is just a final scene, correct? He says state law is A, state law is really B. That doesn't make sense, does it? But the question is, I agree, it's not hypothetical, but if the complaint doesn't make sense, it doesn't make sense, but where the complaint requires... I don't understand. The complaint requires interpretation of the collective bargaining agreement to learn that it doesn't make sense. That's where 301 comes from. I don't think it's necessarily true. That is fact. There may be a very clear answer, under state law, that doesn't require interpreting the collective bargaining agreement. It's very interesting to me. Thank you. One thing that's gone unsaid here is that there's no question that the 226 claims survive the preemption. I mean, those are based on the contents of the wage statements. Those have nothing to do... I mean, those are a whole separate document from the collective bargaining agreement. 226 is an entirely separate statute. Agreed-upon wages doesn't even appear in 226. From gross wages as defined in 226. So, how is it the same problem? It's a different statute. It's a different statutory term. It's a different... They're talking about agreed-upon wages in 222, but if that's the essence of this state law inquiry here, everyone is accepting their fanciful description of this state law inquiry. I think, in fact... Correct. But, I mean... No, the gross wages... I mean, gross wages is something you determine by looking at the accounting. The nine cents an hour, which is not in that statute, exists in a single look into this fund from the employee's wages. I mean, how do you... But that's the answer... That's the question, not the answer. Right. Was it more for their wages, or was the employer paying the nine cents? It was taking the nine cents. That's the entire point. We can prove that. And that's our darkest decider edge in every single other case like this. The California court said they have to resolve it through analysis of the accounting. And in this case, it will also involve analysis of the assumed rate being calculated on wages per hour. What difference does that make? The point is that you can see that they accounted for it... They accounted for it as a wage deferral. Okay? In their internal accounting, we can show that. I provided you with a long list of facts in our supplemental briefing of all the different financial points that we can make. And this is prior even to discovery. In Madsen, that's exactly the point that you make. This is a factual inquiry that goes far beyond the CBA. The CBA just provides the backdrop to it. In Madsen, they're doing exactly what the defendants did in Madsen. They're basically mischaracterizing what our claims are. They're saying that it's dependent on wages agreed upon. It's not dependent on that. State law inquiry here is basically saying, did you properly disclose? Really, that's what the state law here is concerned with. That's the groveling of the state law. Did you properly disclose or were you concealing something from these four employees and basically secretly deducting this from them because they didn't want to pay attention to the fact that they were essentially increasing their union dues. What this nine cents per hour was for all intents and purposes was a new component of their union dues. That's the economic reality of it. The nine cents per hour was being paid to provide the union's portion of a 50-50 partnership between Kaiser and the coalition of Kaiser employee unions. They were issued a contributory 50% of the cost of this LME trust, this LME partnership. The nine cents per hour went to fund the union's portion of that. Everyone agrees to that. That's what it says. They should have simply listed it on their wage statements as a deduction, as either a sub-component of union dues or as a different category of union dues. They're on the back of the wage statement. What about this discussion that we were having before about the fact that your complaint seems to or could be read as requiring some conclusion about whether it's the national agreement or the local agreement that governs here and exactly what is the wage agreed upon overall and so on. It may be for all the reasons you're saying that it's that, that is to tell you we'll dedicate this case, we don't have to, but that's the complaint. Nonetheless, they'll set up 301 jurisdiction because it looks in the I think they're quoting the national agreement does not constitute an allegation. I don't think that we did not depend on that. If you read the complaint fairly, you'll see that all we're saying is you basically look at these three things. Look at the 3% across the board wage increase, look at the 9 cent contribution, diversion, whatever you want to call it, and then look at the wage scales, which are the net of the 3% minus the 9 cents. Everyone agrees on those three things. What are they? What are they under California law? Does it fly under California law to say that the 3% and the 9 cents were merely a thought process leading to wage scales? That's what they're trying to argue, that the national agreement was in a sense lower in the hierarchies than the local wage scales where the rubber really hits the rubber road is in the local wage agreement, right? So that in effect, you can kind of cast aside the national agreement as just being kind of a thought process or the thinking through of what the calculations are, right? You argued different things in the complaint and then on your brief on appeal, and the district court dismissed with leave to amend and said I think that it needed to be determined to resolve whether CPA included the national and local agreements or just the national. But you did not amend your complaint at that point. Your Honor, the district court asked us. I'm just trying to figure out why you didn't amend your complaint at that point. Because as I left, the district court asked us to re-allege our claims as federal claims. We can't re-allege non-existent claims. The district court seemed to make clear the basis for what she was inclined to do and why. You had opportunity there and you didn't take advantage of it. I simply disagree. She states directly in her order that I have  the state claims as federal claims. These are state minimum labor standards. Congress allocates the creation and the enforcement of minimum labor standards to the states. There are no corresponding federal minimum labor standards. There's no possible way that I could have re-alleged these claims as federal claims. That's what she asked me to do. She did not go back to you. I'm sorry. I just wanted to make sure. I was very helpful. In the case of Stroud v. Kaiser Foundation, I was supposed to submit it.
judges: Hawkins, Berzon, Murguia